Brian C. Lake (#020543)
Barry G. Stratford (#029923)
PERKINS COIE LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone: 602.351.8000
Facsimile: 602.648.7000
BLake@perkinscoie.com
BStratford@perkinscoie.com
DocketPHX@perkinscoie.com

*Attorneys for Defendant All Trans Financial Services Credit Union Limited*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Reward Card Solutions, LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>1st California Bank aka Pacific Western Bank aka Pacwest Bancorp, a California banking institution; All Trans Financial Services Credit Union, Ltd, an Ontario, Canada banking institution; ABC Defendants I-X,<br><br>              Defendants. | No. 2:14-cv-01805-BSB<br><br>**DEFENDANT ALL TRANS FINANCIAL SERVICES CREDIT UNION LIMITED'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM IN SUPPORT**<br><br>**(Oral Argument Requested)** |

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant All Trans Financial Services Credit Union Limited ("All Trans") respectfully moves this Court to dismiss Plaintiff Reward Card Solutions, LLC's claims against it for lack of personal jurisdiction. This Motion is supported by the accompanying Memorandum, the Declaration of Helen P. Smith submitted herewith, and the record in this action.

114352-0001/LEGAL123024261.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Plaintiff Reward Card Solutions, LLC ("RCS") is in the business of buying and reselling prepaid cards for use with the Visa or MasterCard networks ("Cards"). RCS purchased a large number of these Cards from a Canadian company called DCR Strategies, Inc. ("DCR"), which RCS then allegedly resold to its own customers. RCS claims that it was damaged when (allegedly) DCR improperly deducted amounts equal to 12% of the outstanding balances on the Cards it had sent RCS based on DCR's claim that its agreement with RCS entitled it to charge those fees. [Compl. ¶¶ 27, 29] Indeed, on August 20, 2013, RCS filed a lawsuit in Maricopa County Superior Court (CV 2013-011504) asserting a breach of contract claim against DCR. However, that case was dismissed without prejudice on January 1, 2014 due to a mandatory arbitration clause in the contract between RCS and DCR, and arbitration between RCS and DCR is currently ongoing in Canada.

Apparently impatient or unhappy about the way the arbitration against DCR is proceeding, RCS looked for someone else to blame for its alleged losses. RCS has now filed this action against the two financial institutions (defendants 1st California Bank and All Trans) that initially *issued* the prepaid Cards that RCS bought from DCR, asserting claims that these two entities maintained prefunding trust accounts to secure their positions as issuers, and in some way gave their "consent and help" to DCR's allegedly improper actions. [*See* Compl. ¶ 30] The Complaint does not name DCR as a defendant (and cannot, since RCS' direct claim against DCR is subject to mandatory arbitration).

Although Defendant 1st California is a U.S.-based bank that issued Cards intended for use in the United States, the Complaint itself alleges that Defendant All Trans is "an Ontario, Canada banking institution" with its principal place of business in Ontario, Canada [Compl. ¶ 3] and does not allege any specific actions by All Trans that were purposefully directed into the State of Arizona. In fact, All Trans is a Canadian credit union with locations only in Ontario, Canada that has no business operations anywhere in

the United States, let alone any purposeful contacts with the State of Arizona. Nevertheless, Plaintiff attempts to compel All Trans to defend itself in this lawsuit in an Arizona court based on nothing more than mere conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.

All Trans does not have sufficient minimum contacts with Arizona or the United States to permit this Court to exercise personal jurisdiction over it consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Accordingly, this Court must dismiss all of Plaintiff's claims against All Trans for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## PLAINTIFF'S ALLEGATIONS AND STATEMENT OF FACTS

Plaintiff's Complaint contains 81 paragraphs. However, a fair reading of the Complaint reveals only one vague and conclusory allegation upon which Plaintiff could possibly attempt to rely to support the imposition of personal jurisdiction over All Trans in Arizona:

> The events which form the subject matter of this complaint occurred in Maricopa County and the damages suffered were suffered in Maricopa County.

[Compl. ¶ 5]  However, there is no specific allegation of any conduct by All Trans that was purposefully directed into Arizona.[1]  In fact, the allegations of the Complaint do not even attempt to distinguish between the alleged actions of the two defendants, opting instead to clump them together in every meaningful allegation as "All Trans and 1st California," "All Trans and/or 1st California," or simply "Defendants," as if the two separate defendants—a U.S. bank and a Canadian credit union—were one single entity. [*See* Compl. ¶¶ 6, 11-15, 19, 21, 26, 29-33, 35-40, 43-45, 48-50, 53-54, 58-61, 63-68, 70,

---

[1] *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss.").

73-77, 80-81][2]  This is a far too slender reed upon which to build a case for personal jurisdiction in Arizona over All Trans.

In fact, as shown by the Declaration of All Trans' Manager of Card Programs Helen P. Smith submitted herewith, All Trans has no established contacts with Arizona or the United States and has not purposefully directed any conduct into Arizona, let alone any conduct that gave rise to the claims in this action.  All Trans is a Canadian credit union formed under the laws of the Province of Ontario, Canada, and is governed by the *Ontario Credit Unions and Caisse Populairres Act* of 1994.  [Smith Decl. ¶ 3]  All Trans' headquarters, primary place of business and "nerve center" is located in Toronto, Canada.  [*Id.* ¶ 4]  All Trans has only three credit union branch locations, all of which are located in Ontario, Canada in or near the City of Toronto.  [*Id.* ¶ 5]  All Trans only does business in Canada.  All Trans does not have any business operations in Arizona, or anywhere else in the United States.  In fact, as an Ontario credit union, All Trans is prohibited from servicing customers in the United States.  [*Id.* ¶ 6]  All Trans has never had an office or a branch in Arizona, or anywhere else in the United States.  [*Id.* ¶ 7]  All Trans has never leased or owned property in Arizona, or anywhere else in the United States.  [*Id.* ¶ 8]  All Trans has not ever maintained an agent for service of process in Arizona, or anywhere else in the United States, and it was served with process in this action by mail in Canada.  [*Id.* ¶ 9]

Furthermore, the Special Account Agreement that governs the business relationship between All Trans and DCR (the "DCR Agreement"; copy attached as Exhibit 1 to the Smith Declaration) very clearly specifies that (i) DCR must get prior approval from All Trans for any customer to whom is wishes to distribute the Cards issued by All Trans, and (ii) the Cards issued by All Trans can only be "distributed within Canada to Customers

---

[2] Interestingly, despite alleging the manner in which All Trans and 1st California purportedly cooperated with DCR in allowing it to improperly deduct amounts from the Card accounts, the Complaint also affirmatively alleges that "[t]he precise terms of DCR's relationship with Defendants All Trans and 1st California is currently unknown to Plaintiff."  [Compl. ¶ 12]

1  who are residents of Canada." [Smith Decl. ¶¶ 10-12 (quoting DCR Agreement § 2.03)]
2  These provisions apply with equal force to any customer of DCR who may act as a sub-
3  distributor of the All Trans-issued Cards, such as RCS. [*Id.* ¶¶ 12-13]

4        DCR never requested All Trans' approval to distribute its Cards to or through RCS,
5  and quite understandably All Trans never gave its approval for DCR to distribute its Cards
6  to RCS or to any other customer or sub-distributor in the United States. [Smith Decl. ¶
7  15] In fact, All Trans did not know that DCR even had any dealings with RCS until after
8  All Trans began to see that some of the Cards it had issued to DCR in Canada were being
9  activated within the United States. [*Id.* ¶ 16] All Trans promptly asked DCR why those
10 Cards were being activated in the United States, and DCR responded by disclosing that it
11 had distributed some of the Cards issued by All Trans in Canada under DCR's own
12 generic "TrueCash" Card program to a company called RCS, and that RCS had
13 subsequently distributed those Cards in the United States (although at the time DCR also
14 told All Trans that RCS had it headquarters in Canada). [*Id.* ¶ 17] All Trans reminded
15 DCR that the Cards All Trans issues may not be distributed to any customers in the United
16 States, and insisted that DCR immediately shut down any Card programs (whether though
17 RCS, or otherwise) that were distributing All Trans-issued Cards in the United States. [*Id.*
18 ¶ 18] Due in part to DCR's failure to get prior approval for RCS as a customer and its
19 improper distribution of All Trans-issued Cards to customers in the United States, All
20 Trans terminated its business relationship with DCR and no longer issues any Cards to
21 DCR. [*Id.* ¶ 21]

22       In sum, All Trans has no meaningful contacts with Arizona or the United States,
23 and it never purposefully directed any conduct into Arizona or the United States, let alone
24 any conduct that is alleged to have given rise to any of Plaintiff's claims in this action.
25 All Trans never gave DCR approval to distribute its cards issued in Canada to RCS or to
26 any other customer in the United States (and as confirmed by the DCR Agreement, All
27 Trans made abundantly clear to DCR that it had no right to do so). To the extent that
28 DCR needed any Cards to be distributed in the United States, it would have to get those

1  Cards from 1st California, or some other U.S.-based issuer. [Smith Decl. ¶ 14] And as
2  soon as All Trans learned that DCR had improperly sent Cards to RCS that were being
3  used in the United States, it promptly demanded that those cards be shut down by DCR,
4  and shortly thereafter terminated its relationship with DCR. [*Id.* ¶¶ 19, 21]

## ARGUMENT

### I. PLAINTIFF HAS THE BURDEN OF ESTABLISHING PERSONAL JURISDICTION WITH FACTS SHOWING THAT ALL TRANS PURPOSEFULLY ESTABLISHED MINIMUM CONTACTS WITH ARIZONA.

A plaintiff bears the burden of establishing personal jurisdiction over any non-resident defendant. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001); *Maloof v. Raper Sales, Inc.,* 113 Ariz. 485, 487, 557 P.2d 522, 524 (Ariz. 1976). Where, as here, a case is filed in Arizona state court and removed to federal court, in order to establish personal jurisdiction plaintiffs must show that (1) Arizona's state long-arm statute, Ariz. R. Civ. P. 4.2(a), confers personal jurisdiction over the nonresident defendant, and (2) the exercise of personal jurisdiction accords with federal constitutional principles of due process that require that the defendant have sufficient "minimum contacts" with the forum and that the assertion of jurisdiction not offend traditional notions of fair play and substantial justice. *See Petrik v. Public Serv. Mut. Ins. Co.*, 879 F.2d 682, 684 (9th Cir. 1989); *Meyers v. Hamilton Corp.*, 143 Ariz. 249, 252, 693 P.2d 904, 907 (Ariz. 1984) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). As a practical matter, the sole issue is whether Plaintiff has established that the exercise of personal jurisdiction over All Trans would comport with constitutional due process because Arizona's long-arm statute permits jurisdiction over non-resident defendants "to the maximum extent permitted by the Constitution of this state and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a); *see also Williams v. Lakeview Co.*, 199 Ariz. 1, 3, 13 P.3d 280, 282 (Ariz. 2000) ("Because Arizona's long-arm rule confers jurisdiction over non-resident defendants to the fullest extent permitted by the Due Process Clause,

'[t]he jurisdictional issue . . . hinges on federal law.'" (alterations in original) (quoting *Uberti v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (Ariz. 1995))). Plaintiff has not satisfied—and, as discussed herein, cannot satisfy—this burden with respect to All Trans.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff cannot rest on the allegations of its complaint, but is obligated to come forward with specific facts sufficient to establish personal jurisdiction over that defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986); *Armstrong v. Aramco Servs. Co.*, 155 Ariz. 345, 348, 746 P.2d 917, 920 (Ariz. Ct. App. 1987). "[A]ctual facts, and not the mere allegations of the complaint, are determinative of the jurisdictional question." *Lycoming Div. of Avco Corp. v. Super. Ct. of Maricopa Cnty.*, 22 Ariz. App. 150, 152, 524 P.2d 1323, 1325 (Ariz. App. Ct. 1974).

In meeting its burden of establishing personal jurisdiction over All Trans, Plaintiff must point to contacts and conduct by All Trans itself that was <u>purposefully</u> directed at or into the forum. As the Supreme Court has held, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Indeed, the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 1122. For the same reason, blanket allegations against "Defendants" collectively are insufficient to establish personal jurisdiction; Plaintiff must point to

1 specific conduct by All Trans in particular. *See Magic Toyota, Inc. v. Southeast Toyota Distrib., Inc.*, 784 F. Supp. 306, 314 (D. S.C. 1992).[3]

A state may assert either "general" or "specific" jurisdiction over a non-resident defendant, depending on the nature and the extent of contacts between that defendant and the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984); *Armstrong*, 155 Ariz. at 349, 746 P.2d at 921. Under either standard, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State," *Burger King*, 471 U.S. at 474, although the extent of the contacts required differs significantly under each of the two standards. In considering minimum contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requires that the non-resident defendant's conduct reflect such a deliberate connection with the forum state that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297; *Hoskinson Through Fleming v. State of Cal.*, 168 Ariz. 250, 252, 812 P.2d 1068, 1070 (Ariz. Ct. App. 1990). The mere fact that it may have been foreseeable that the defendant's actions could result in harm in the forum state is not enough—the defendant must have purposefully directed his conduct toward the state. *World-Wide Volkswagen*, 444 U.S. at 295; *Hanson*, 357 U.S. at 253; *Hoskinson*, 168 Ariz. at 253, 812 P.2d at 1071.

---

[3] "Not once do plaintiffs even attempt to address the acts committed by *each* defendant and the contacts each defendant has had with South Carolina, but instead insist on referring to defendants collectively. Without any evidence before it that Janice Moran, James Moran, Jr., Pat Moran and Arlene McNally made the minimum contacts required by the Fourteenth Amendment, this Court cannot exercise personal jurisdiction over these defendants." *Magic Toyota*, 784 F. Supp. at 314.

## II. THERE IS NO BASIS FOR GENERAL JURISDICTION OVER ALL TRANS BECAUSE ALL TRANS IS NOT "AT HOME" IN ARIZONA.

Recent decisions of the United States Supreme Court have brought about a major change in general jurisdiction jurisprudence severely limiting the circumstances under which general jurisdiction can be found, as many scholars and other commentators have noted.[4] The first, *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846, 2851 (2011), established that general jurisdiction over an out-of-state corporation is consistent with the Due Process Clause only if the corporation is "at home" in the forum state. The second decision, *Daimler AG* v. *Bauman*, 134 S. Ct. 746, 760–61 & n.19 (2014), clarified *Goodyear*'s "at home" standard, holding that except in extraordinary circumstances general jurisdiction may obtain only if an out-of-state corporation has its principal place of business in the forum state or is incorporated there. As the Court emphasized, "[a]t home" for purposes of general jurisdiction is not "synonymous with 'doing business'" as the "doing business" test was "framed before specific jurisdiction evolved in the United States." *Id.* at 762 n.20. To deem a "corporation that operates in many places" to be "at home in all of them" would be an impermissibly "exorbitant exercise[] of all-purpose jurisdiction." *Id.* at 761–62 & n.20. Rather, the fora in which a corporation is considered to be "at home" must be "unique" and "easily ascertainable" so as to "permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 760–62 (citation and internal quotation marks omitted). Only in a truly "exceptional case" will a corporation be deemed "at home" in "a forum other than its formal place of incorporation or principal place of business." *Id.* at 761 n.19.

---

[4] *See, e.g.,* Jamin S. Soderstrom, *Bauman Will Shrink the Scope of Jurisdictional Discovery*, LAW360, Mar. 6, 2014, http://www.law360.com/articles/515940/bauman-will-shrink-the-scope-of-jurisdictional-discovery ("The U.S. Supreme Court effected a sea change in general jurisdiction jurisprudence on Jan. 14, 2014, when it issued 8-0 its decision in *Daimler AG* v. *Bauman*."); Leslie R. Bennett, *Daimler Decision Topples Longstanding New York Cases*, N.Y.L.J., Jan. 24, 2014 ("*Daimler* has . . . radically undone and rearranged the application of general jurisdiction to foreign corporations in New York, and elsewhere."); John N. Drobak, *Personal Jurisdiction in a Global World:*

The Complaint here implicitly concedes that All Trans is not "at home" in Arizona. The Complaint alleges that All Trans "is an Ontario, Canada banking institution with its principal place of business . . . [in] Canada." [Compl. ¶ 3] A straightforward application of *Daimler* makes clear that Ontario, Canada is the only "home" All Trans has for purposes of general jurisdiction analysis. All Trans is a credit union formed under the laws of the Province of Ontario, Canada, with its headquarters, principal place of business and "nerve center" in Toronto, Canada. [Smith Decl. ¶ 4] Thus, there can be no argument for the assertion of general jurisdiction over All Trans in Arizona.

### III. THERE IS NO BASIS FOR SPECIFIC JURISDICTION OVER ALL TRANS BECAUSE IT DID NOT PURPOSEFULLY ESTABLISH MINIMUM CONTACTS WITH ARIZONA, AND PLAINTIFF'S CLAIMS DO NOT ARISE OUT OF ALL TRANS' CONTACTS WITH ARIZONA.

An Arizona court may exercise specific jurisdiction over a non-resident defendant only "if: (1) the defendant purposefully avails himself of the privilege of conducting business in the forum; (2) the claim arises out of or relates to the defendant's contacts with the forum; and (3) the exercise of personal jurisdiction would be reasonable." *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, 13 P.3d 280, 282 (Ariz. 2000) (citing *Shute v. Carnival*

---

*The Impact of the Supreme Court's Decisions in* Goodyear Dunlop Tires *and* Nicastro, 90 WASH. U. L. REV. 1707, 1723 (2012) ("Determining whether general jurisdiction exists over a corporation is an easier task after the doctrinal change in *Goodyear Dunlop Tires* from 'continuous and systematic business' to 'at home.' However, the change in the standard also limited the reach of general jurisdiction."); Daniel B. Goldman & Adam W. Braveman, *Eroding Theory of General Personal Jurisdiction: Effect of 'Bauman'*, N.Y.L.J., Feb. 3, 2014 ("This decision effectively invalidates 47 years of general jurisdiction law in the state of New York . . . and it severely restricts the ability of a plaintiff to hail a foreign corporation into New York court based on a theory of general jurisdiction."); Christopher Hannan, *Recent Supreme Court Cases Change (Or At Least Reset) the Game for Personal Jurisdiction*, JDSUPRA BUSINESS ADVISOR, Apr. 29, 2014, http://www.jdsupra.com/legalnews/recent-supreme-court-cases-change-or-at-63479/ ("[T]he *Daimler* decision . . . marks a tectonic shift in the concept of general 'all purpose' jurisdiction over out-of-state corporate defendants."); Tanya J. Monestier, *Where is Home Depot 'At Home'?* Daimler v. Bauman *and the End of Doing Business Jurisdiction*, 66 HASTINGS L.J. (forthcoming 2014) at 1, *available at* http://ssrn.com/abstract=2423438 ("*Daimler* officially sounds the death knell for doing business jurisdiction in the United States."); S. Wilson Quick, *Staying Afloat in the Stream of Commerce:* Goodyear, McIntyre, *and the Ship of Personal Jurisdiction*, 37 N.C.J. INT'L L. & COM. REG. 547, 550 (2012) ("The *Goodyear* decision . . . . send[s] the message that state courts' assertion of personal jurisdiction over non-forum defendants had gotten out of control.").

*Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585 (1991)). The constitutional touchstone for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Those minimum contacts "must come about *by an action of the defendant purposefully directed toward the forum state*." *Uberti*, 181 Ariz. at 570, 892 P.2d at 1359 (emphasis in original) (quoting *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 112 (1986)); *see also Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271, 736 P.2d 2, 5 (Ariz. 1987) (holding that defendant must have "purposefully created contacts" with, or "purposefully directed [its] activities at" the forum state). Most significantly, however, the "plaintiff's claim must result from 'alleged injuries that "*arise out of or relate to*" [the defendant's] . . . activities' in the forum state." *Williams*, 199 Ariz. at 4, 13 P.3d at 283 (emphasis added) (alterations in original) (quoting *Burger King*, 471 U.S. at 472). Thus, as the Supreme Court recently reiterated in *Walden* v. *Fiore*, 134 S. Ct. 1115, 1125 (2014), the relevant inquiry is whether the conduct challenged in the action "connects [the defendant] to the forum in a meaningful way." Absent such a meaningful connection, no basis for specific jurisdiction exists.

Examining the Complaint against this standard reveals that Plaintiff cannot establish specific jurisdiction over All Trans in Arizona because it has failed to allege any "suit-related conduct" by All Trans that was carried out within, or purposefully targeted at, Arizona. *See id.* 134 S. Ct. at 1121. The Complaint vaguely alleges in boilerplate form that the "events which form the subject matter of this complaint occurred in Maricopa County and the damages suffered were suffered in Maricopa County." [Compl. ¶ 5] Exactly what "events" in Arizona this is referring to, and how exactly All Trans purposefully caused or directed those events to occur in Arizona, is anyone's guess. Obviously this is nothing more than a vague factual or legal conclusion that provides no concrete jurisdictional facts. The Court need not, and indeed should not, assume the truth of such generic and conclusory allegations for purposes of a motion to dismiss. *See, e.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that, for

1  purposes of a motion to dismiss, the court is not required to accept as true "allegations that
2  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences");
3  *Clegg*, 18 F.3d at 754–55 ("[T]he court is not required to accept legal conclusions cast in
4  the form of factual allegations if those conclusions cannot reasonably be drawn from the
5  facts alleged."). Plaintiff must come forward with *specific facts* sufficient to establish
6  personal jurisdiction over All Trans. *See, e.g., Scott v. Breeland*, 792 F.2d 925, 927 (9th
7  Cir. 1986); *Armstrong v. Aramco Serv. Co.*, 155 Ariz. 345, 348, 746 P.2d 917, 920 (Ariz.
8  Ct. App. 1987); *Lycoming Div. of Avco Corp. v. Super. Ct. of Maricopa Cnty.*, 22 Ariz.
9  App. 150, 152, 524 P.2d 1323, 1325 (Ariz. App. Ct. 1974).

10  Further, even Plaintiff's conclusory allegations cannot stand in the face of Helen
11  Smith's Declaration to the contrary. *Alexander v. Circus Circus Enter., Inc.*, 972 F.2d
12  261, 262 (9th Cir. 1992) ("[F]or purposes of personal jurisdiction, we may not assume the
13  truth of allegations in a pleading which are contradicted by affidavit." (citation and
14  internal quotation marks omitted)). Helen Smith's Declaration establishes that All Trans
15  has no meaningful contacts with Arizona or the United States. [Smith Decl. ¶¶ 4-9]

16  In addition, it is clear from the terms of the DCR Agreement that All Trans never
17  intended that any of the Cards it issued would ever be distributed in the United States,
18  whether directly or indirectly. Specifically, All Trans understood that pursuant to
19  Sections 2.03 and 2.09 of the DCR Agreement, (i) DCR was required to secure All Trans'
20  prior approval for any customer (including a subdistributor) to whom it wished to sell and
21  distribute any Cards issued by All Trans, and (ii) DCR was explicitly prohibited from
22  selling and distributing any cards issued by All Trans to any customer (including a
23  subdistributor) who is not a resident of Canada, or who plans to distribute the Cards to
24  anyone outside of Canada. [Smith Decl. ¶ 14] These provisions were very important,
25  since All Trans, as an Ontario credit union, is not permitted to issue cards that would be
26  distributed in the United States or used by residents of the United States. [*Id.*] All Trans
27  understood that DCR had an separate agreement with a bank or credit union based in the
28

1  United States that would issue any prepaid cards DCR needed to distribute to its
2  customers in the United States. [*Id.*]

3  Furthermore, DCR never requested All Trans' approval to distribute its Cards to or
4  through Reward Card Solutions, LLC ("RCS"), and All Trans never gave its approval for
5  DCR to distribute its Cards to RCS. [Smith Decl. ¶ 15] DCR never requested, and All
6  Trans never gave approval for DCR to distribute Cards issued by All Trans to RCS or any
7  other customer who was in the United States or who planned to distribute the Cards in the
8  United States. [*Id.*] As soon as All Trans learned that DCR had sent its cards to RCS to
9  be distributed in the United States, it insisted that those Card programs be shut down. [*Id.*
10 ¶ 19] As a result, All Trans never intentionally or willingly engaged in any business
11 dealings involving RCS or any Cards that were distributed in the United States. [*Id.* ¶ 20]
12 And finally, because of the way the prepaid Card programs are structured with DCR
13 serving as the program manager, any fees from the Card accounts fees to which DCR
14 would be entitled were determined entirely by a private agreement between DCR and its
15 own customer (*e.g.*, RCS) that did not involve All Trans, and as a result All Trans was
16 never aware of and never approved any fee arrangements or deductions as applied
17 between DCR and RCS. [*Id.* ¶ 22-23]

18 Accordingly, Plaintiff has failed to allege *any* specific conduct by All Trans that
19 was *purposefully* directed at Arizona that gave rise to the claims in this action. To the
20 contrary, all the relevant facts demonstrate that All Trans was doing everything it could to
21 *avoid* engaging in any business operations in the United States. In other words, All Trans
22 never "purposefully avail[ed] itself of the privilege of conducting activities within the
23 forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at
24 253. The fact that the Plaintiff happened to be located in Arizona—or even that it may
25 have been foreseeable that the defendant's actions could result in harm in the forum
26 state—fails to establish a sufficient basis for asserting specific jurisdiction over All Trans.
27 *World-Wide Volkswagen*, 444 U.S. at 295; *Hanson*, 357 U.S. at 253; *Walden*, 134 S. Ct. at
28 1121.

## IV. THE EXERCISE OF PERSONAL JURISDICTION OVER ALL TRANS WOULD BE UNREASONABLE AND UNFAIR.

The final step in any jurisdictional inquiry is for a plaintiff to show that the exercise of personal jurisdiction over the nonresident defendant does "not offend 'traditional notions of fair play and substantial justice,'" *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)), or in other words, that it would not be "unreasonable and unfair" to assert personal jurisdiction under the circumstances. *Asahi*, 480 U.S. at 116. In determining whether the exercise of personal jurisdiction is reasonable, courts consider several factors:

> In evaluating reasonableness, we examine: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the defendant's burdens from litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. All seven factors must be weighed. None is dispositive.

See *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995).

Plaintiff's jurisdictional showing here with respect to minimum contacts is extremely weak. *See OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1092 (10th Cir. 1998) ("[T]he weaker the plaintiff's showing on [minimum contacts], the less [the] defendant need show in terms of unreasonableness." (second alteration in original) (citation and internal quotation marks omitted)). On the other hand, the burden on All Trans of conducting this litigation in a jurisdiction where it has no contacts would unquestionably be significant. *See id.* at 1096 ("While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." (citing *World-Wide Volkswagen*, 444 U.S. 286, 292 (1979)). In addition, All Trans has done nothing at all to "interject" itself into the affairs or the forum state (Arizona), and the exercise of jurisdiction by an Arizona

court would result in a significant and unjustified conflict with the sovereignty of Canada since the oversight and regulation of an Ontario credit union's financial operations is a matter of particular importance and authority for the government of Ontario. [*See* Smith Decl. ¶ 3 (stating that All Trans is governed by the Ontario *Credit Unions and Caisse Populairres Act* of 1994)]

## CONCLUSION

Plaintiff has failed to meet its burden of establishing personal jurisdiction over All Trans under either of the "general jurisdiction" or "specific jurisdiction" standards. For this reason, all of Plaintiff's claims against All Trans should be dismissed with prejudice.

Dated: August 21, 2014          **PERKINS COIE LLP**

By: s/ Barry G. Stratford
    Brian C. Lake
    Barry G. Stratford
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona  85012-2788

*Attorneys for Defendant All Trans Financial Services Credit Union Limited*

# CERTIFICATE OF SERVICE

☒ I hereby certify that on August 21, 2014, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik    ps@strojnik.com , strojnikmurray@aol.com

☒ I hereby certify that on August 21, 2014, I served the attached document by first class mail on Magistrate Judge Bridget S. Bade, United States District Court of Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

☒ I hereby certify that on August 21, 2014, I served the attached document by first class mail and email on the following, who are not registered participants of the CM/ECF System:

Michael J Finnegan
Pillsbury Winthrop LLP - Los Angeles, CA
725 S Figueroa St., Ste. 2800
Los Angeles, CA 90017-5406
mfinnegan@pillsburylaw.com

                              s/ Janet Roe