1  Brian C. Lake (#020543)
2  Barry G. Stratford (#029923)
   PERKINS COIE LLP
3  2901 North Central Avenue, Suite 2000
   Phoenix, Arizona  85012-2788
4  Telephone:  602.351.8000
   Facsimile:  602.648.7000
5  BLake@perkinscoie.com
6  BStratford@perkinscoie.com
   DocketPHX@perkinscoie.com
7

8  *Attorneys for Defendant All Trans Financial*
   *Services Credit Union, Ltd.*
9

10                UNITED STATES DISTRICT COURT

11                    DISTRICT OF ARIZONA

12

13 Reward Card Solutions, LLC,                    No.  2:14-cv-01805-BSB

14              Plaintiff,

15       v.                                        **DECLARATION OF HELEN P.
                                                   SMITH IN SUPPORT OF ALL
16 1st California Bank aka Pacific Westgern Bank   TRANS FINANCIAL SERVICES
   aka Pacwest Bancorp, a California banking       CREDIT UNION LIMITED'S
17 institution; All Trans Financial Services Credit MOTION TO DISMISS FOR
   Union, Ltd, an Ontario, Canada banking          LACK OF PERSONAL
18 institution; ABC Defendants I-X,                JURISDICTION**
19
                Defendants.
20

21

22       I, Helen Patricia Smith, declare:

23       1.    I am over the age of eighteen, and I have personal knowledge of the matters

24 stated herein.  If called upon to testify, I could and would testify competently thereto.

25       2.    I am employed by Defendant All Trans Financial Services Credit Union

26 Limited ("All Trans") as the Manager of Card Programs.  In my role as Manager of Card

27 Programs I have primary responsibility for overseeing and managing All Trans' business

28

114352-0001/LEGAL123069428.1

operations relating to prepaid cards for use with the Visa or MasterCard networks ("Cards"). I am knowledgeable about and familiar with All Trans' business operations relating to prepaid Cards, both generally and as they relate to DCR.

3. All Trans is a Canadian credit union formed under the laws of the Province of Ontario, Canada, and is governed by the Ontario *Credit Unions and Caisse Populairres Act* of 1994.

4. All Trans' headquarters, principal place of business and "nerve center" is located in Toronto, Canada.

5. All Trans has three credit union branch locations, all of which are located in Ontario, Canada in or near the City of Toronto.

6. All Trans only does business in Canada. All Trans does not have any business operations in Arizona, or anywhere else in the United States. In fact, as an Ontario credit union, All Trans is prohibited from servicing customers in the United States.

7. All Trans has never had an office or a branch in Arizona, or anywhere else in the United States.

8. All Trans has never leased or owned property in Arizona, or anywhere else in the United States.

9. All Trans has not ever maintained an agent for service of process in Arizona, or anywhere else in the United States, and it was served with process in this action by mail in Canada.

10. The business relationship between All Trans and DCR was governed by a Special Account Agreement dated May 1, 2008, which was subsequently amended on April 24, 2009 (collectively, the "DCR Agreement"). A copy of the DCR Agreement is attached hereto as Exhibit 1.

11. The DCR Agreement states the terms under which All Trans issued prepaid Cards to DCR, and it also governed the manner and geographic location in which DCR

was permitted to sell and distribute those Cards to DCR's own customers, including any customers who would act as subdistributors of these Cards.

12.    DCR's permitted distribution of the All Trans-issued Cards to its customers (including any subdistributors) is addressed in Section 2.03 of the DCR Agreement entitled "Distribution of Cards," which states:

> The Credit Union agrees that the Company [DCR] may distribute Cards to Customers, provided that each Card program (including potential subdistributors of Cards for those programs) by which Company intends to distribute Cards to Customers, including the intended subdistributors of such Cards, if any, are ***approved by the Credit Union***, and:
>
> > (a)    ***all Cards are distributed within Canada to Customers who are residents of Canada*** . . . .

Exhibit 1 § 2.03 (emphasis added).

13.    In addition, Section 2.09 of the DCR Agreement states:

> The Company [DCR] represents and warrants to the Credit Union that any person who becomes a Customer and distributes Cards as a sub-distributor of the Company will agree to comply with the terms imposed on the Company by sections 2.03, 2.04, and 2.05 of this Agreement, or otherwise facilitate the Company complying with its obligations under section 2.03, 2.04, and 2.05 of this Agreement in respect of Cards distributed by such Customer.

Exhibit 1 § 2.09.

14.    All Trans understood that pursuant to Sections 2.03 and 2.09 of the DCR Agreement, (i) DCR was required to secure All Trans' prior approval for any customer (including a subdistributor) to whom it wished to sell and distribute any Cards issued by All Trans, ***and*** (ii) DCR was explicitly prohibited from selling and distributing any cards issued by All Trans to any customer (including a subdistributor) who is not a resident of Canada, or who plans to distribute the Cards to anyone outside of Canada. These provisions were very important, since All Trans, as an Ontario credit union, is not permitted to issue cards that would be distributed in the United States or used by residents of the United States. All Trans understood that DCR had an separate agreement with a bank or credit union based in the United States that would issue any prepaid cards DCR needed to distribute to its customers in the United States.

15.     DCR never requested All Trans' approval to distribute its Cards to or through Reward Card Solutions, LLC ("RCS"), and All Trans never gave its approval for DCR to distribute its Cards to RCS.  DCR never requested, and All Trans never gave approval for DCR to distribute Cards issued by All Trans to RCS or any other customer who was in the United States or who planned to distribute the Cards in the United States. The lists of approved card programs that All Trans sent to Visa and MasterCard never included RCS.

16.     All Trans did not know that DCR even had any dealings with RCS until after All Trans began to see that some of the Cards it had issued to DCR in Canada were being activated within the United States.

17.     All Trans promptly asked DCR why those Cards were being activated in the United States, and DCR responded by disclosing that it had distributed some of the Cards issued by All Trans in Canada under DCR's own generic "TrueCash" Card program to a company called RCS, and that RCS had subsequently distributed those Cards in the United States (although at the time DCR also told All Trans that RCS had it headquarters in Canada).

18.     All Trans reminded DCR that the Cards All Trans issues may not be distributed to any customers in the United States, and insisted that DCR immediately shut down any Card programs (whether though RCS, or otherwise) that were distributing All Trans-issued Cards in the United States.

19.     All Trans never gave DCR approval to distribute its cards to RCS or any other customer in the United States.  As soon as All Trans learned that DCR had improperly sent Cards to RCS that were being used in the United States, it promptly demanded that those cards be shut down by DCR.

20.     All Trans never intentionally or willingly engaged in any business dealings involving RCS or any Cards that were distributed in the United States.

21.     DCR's failure to get prior approval for RCS as a customer and its improper distribution of All Trans-issued Cards to customers in the United States was a significant

1 factor in All **Trans'** decision to terminate its business relationship with DCR. As a result,

2 All Trans no longer issues any Cards to DCR.

3      22.     Since DCR was the program manager for the Cards it received from All

4 Trans, any amounts that DCR would be entitled to receive from the Card accounts would

5 be categorized as fees, and they would be determined entirely by a private agreement

6 between DCR and its own customer (*e.g.*, RCS) that did not involve All Trans. All Trans

7 was never aware of any fee arrangements as between DCR and RCS.

8      23.     DCR entered into a separate agreement with an outside company called FIS

9 Global ("FIS") that tracked the account balances on the Cards, processed retail point of

10 sale charges and ATM withdrawals made on the Cards by end-user cardholders, and also

11 processed any fees that were charged to the Card accounts by DCR. All Trans' role was

12 limited to settling the daily account balances with the credit card company (Visa or

13 MasterCard). Neither FIS nor DCR ever provided All Trans with a separate breakdown of

14 any fees that were charged to the Card accounts by DCR, and All Trans had no

15 involvement in approving such fees.

16      I declare under penalty of perjury under the laws of the United States of America

17 that the foregoing is true and correct.

18      Executed on this 21 day of August, 2014.

19

20                                              Helen Patricia Smith

21

22

23

24

25

26

27

28

114352-0001/LEGAL123069428.1                   -5-

1

**CERTIFICATE OF SERVICE**

2      ☒    I hereby certify that on August 21, 2014, I electronically transmitted the

3 attached documents to the Clerk's Office using the CM/ECF System for filing and

4 transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5      Peter Strojnik    ps@strojnik.com , strojnikmurray@aol.com

6

7      ☒    I hereby certify that on August 21, 2014, I served the attached document by

8 first class mail on Magistrate Judge Bridget S. Bade, United States District Court of

9 Arizona, 401 West Washington Street, Phoenix, Arizona 85003-2118.

10

11      ☒    I hereby certify that on August 21, 2014, I served the attached document by

12 first class mail and email on the following, who are not registered participants of the

13 CM/ECF System:

14      Michael J Finnegan
     Pillsbury Winthrop LLP - Los Angeles, CA
15      725 S Figueroa St., Ste. 2800
     Los Angeles, CA 90017-5406
16      mfinnegan@pillsburylaw.com

17

18                                   s/ Janet Roe

19

20

21

22

23

24

25

26

27

28