Michael J. Finnegan #137409 *[Pro Hac Vice]*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
Telephone: (213) 488-7100
Facsimile No.: (213) 629-1033
Email:  mfinnegan@pillsburylaw.com

Attorneys for Defendant, 1st California Bank
aka Pacific Western Bank aka PacWest Bancorp

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Reward Card Solutions, LLC, | No. 2:14-cv-01805-DJH |
| Plaintiff, | DEFENDANT 1st CALIFORNIA BANK'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT |
| vs. | |
| 1st California Bank aka Pacific Western Bank aka Pacwest Bancorp, a California banking institution; All Trans Financial Services Credit Union, Ltd, an Ontario, Canada banking institution; ABC Defendants I-X, | **Oral Argument Requested** |
| Defendants. | |

I.  MOTION AND INTRODUCTION

Plaintiff Reward Card Solutions, LLC ("Plaintiff" or "RCS") alleges that it is a retailer of pre-paid credit cards. RCS has a dispute with the program manager, DCR Strategies Inc. ("DCR"), from whom it acquired certain pre-paid credit cards concerning debits allegedly made by DCR to the cards. RCS does not allege the terms, or even the existence, of its contract with DCR and DCR is not party to this case. RCS sued DCR, its real target, in an action initially filed in Arizona, but now pending in Canada. Unable to pursue claims in Arizona against DCR, RCS filed this action against two banks that issued the pre-paid credit cards, Pacific Western Bank, successor by merger to First California Bank (erroneously referred to as "1st California Bank") ("Pacific Western") and All Trans Financial Services Credit Union, LTD. ("All Trans Financial"). In short, RCS is attempting to drag the banks that issued the cards and processed DCR's debits into its dispute with DCR. There is no basis for this lawsuit. It is akin to naming a bank in a breach of contract action merely because the bank processed the check used as consideration under the contract.

RCS acknowledges that it has no contract with either Pacific Western or All Trans Financial. Further, RCS fails to allege what it is that the banks did to give rise to any claim, other than to baldly allege that the pre-paid cards it acquired from DCR were debited. More importantly, there are no facts alleged as to how the banks participated in this debiting, how or if they were benefitted, or why the debiting is improper under the undisclosed agreement between RCS and DCR. Pacific Western is left to guess what it is alleged to have done and why the debiting of the pre-paid cards is allegedly improper.

Each of RCS' claims is fatally defective on the grounds set forth below. Accordingly, Pacific Western hereby respectfully moves to dismiss RCS' Complaint, and Claims One through Seven, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted.

## II. BACKGROUND

The EPS Division of First California Bank[1] formerly provided sponsorship and banking support services to businesses offering pre-paid credit cards. The pre-paid card businesses, often referred to as program managers, managed pre-paid card programs and provided for marketing and distribution of pre-paid cards issued by First California Bank for cardholders. The program managers contracted with their customers (sometimes referred to as merchants or retailers), such as RCS, to market the pre-paid cards and obtain the pre-paid cards from issuing banks, which issued the pre-paid cards per the specifications of the program manager and/or the merchants. One such program manager is DCR.

While RCS fails to allege the specifics, or even existence, of its contractual relationship with DCR, RCS acknowledges that it obtained pre-paid cards from DCR under a program. The rights and responsibilities of RCS and DCR are presumably governed by their contract – the terms of which RCS fails to allege or attach. Rather, RCS merely alleges that "RCS is unable to append, allege or deny the existence of an agreement with DCR because of existing or non-existing confidentiality provisions of the existing or non-existing RCS – DCR Agreement." Complaint, ¶ 16. Apparently RCS and DCR have a dispute over aspects of their contract concerning certain pre-paid cards ultimately issued by First California, now Pacific Western, and All Trans Financial. That dispute is being litigated in Canada.

In this case, RCS merely alleges that it acted as the retailer for DCR's "TruCa$h" pre-paid card program ("Program"), for which DCR acted as wholesaler. Complaint, ¶¶ 9-10. RCS further alleges that DCR obtained authority from defendants, including Pacific Western, to receive payments for cards, to load the cards, and to otherwise debit the cards. Complaint, ¶ 13. RCS further alleges that DCR supplied RCS with cards for distribution, that DCR was obligated to maintain the necessary administration and processing relationship to allow for the loading of cards and to provide for the withdrawal of funds by point-of-sale

---

[1] Prior to its merger with Pacific Western Bank, First California Bank gave notice to all program managers that it was exiting the pre-paid card sponsorship business.

1   transactions, and that RCS purchased and paid for the cards, which were distributed to
2   cardholders.  Complaint, ¶¶ 17-18, 25-26.   Finally, RCS alleges that DCR took the position
3   that RCS guaranteed (or promised) a 12% breakage on the cards and, therefore, debited in
4   excess of $3.1 million from the cards (Complaint, ¶¶ 27, 30).  All of these allegations focus
5   on the program manager, DCR, which is a not a party in this case.
6          Neither Pacific Western, nor for that matter First California, had a relationship –
7   contractual or otherwise – with RCS, and RCS has not alleged any such relationship.
8   Additionally, Plaintiff has not alleged that Pacific Western had oversight or control over
9   RCS' dealings with DCR concerning their pre-paid card program.  RCS' sole allegations in
10  relation to Pacific Western are that that Pacific Western processed DCR's debits to the cards
11  and thereby "consented" to DCR's debits (Complaint, ¶¶ 29-30).
12         Lacking a contract with Pacific Western, and unwilling to allege even the existence of
13  its contract with DCR, RCS fails to allege any facts supporting the theory that Pacific
14  Western played any role in the alleged debiting of the cards by DCR.  More importantly,
15  RCS fails to allege any facts that make any such alleged debiting of the cards by DCR, or
16  anyone else, improper.  This is the basic failure in the complaint.  Pacific Western is left
17  guessing what it is alleged to have done and why that alleged conduct is improper given that
18  there is no contract between RCS and Pacific Western and that RCS has not alleged that the
19  debiting violated a contract with DCR.
20         RCS has merely pointed to the fact that Pacific Western acted as the card issuer to
21  DCR as part of the pre-paid credit card business, but has not alleged any additional *facts* (as
22  opposed to conclusions) regarding the alleged actions taken by Pacific Western.  Further,
23  RCS has not alleged facts sufficient to give Pacific Western notice of the terms of its
24  relationship with DCR, such that Pacific Western is unable to ascertain whether DCR's
25  alleged actions were done within the scope of its contract with RCS.  With regard to RCS'
26  allegations involving fraud, RCS has failed to provide the requisite specifics under Federal
27  Rule of Civil Procedure 9(b) – namely the who, what, where, when, and how.  Pacific
28  Western is left to speculate as to the precise nature of how the alleged fraud occurred and, as

1  such, RCS falls well short of this heightened pleading standard.

2      III.    **LEGAL STANDARD**

3      Under Fed. R. Civ. P. 12(b)(6), the Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." That rule "is read in conjunction with Rule 8(a), which requires not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Zixiang Li v. Kerry*, 710 F.3d 995, 998 (9th Cir. 2013) (internal quotations and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 999 (internal quotations omitted). "Mere conclusory statements in a complaint and 'formulaic recitations of the elements of a cause of action' are not sufficient." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal citations omitted). "Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Id*.

    Moreover, the court "do[es] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotations and citations omitted). Plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez*, 683 F.3d at 1108-09 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully." *Zixiang*, 710 F.3d at 999. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (quoting *Iqbal*).

    Further, a complaint must contain facts with enough specificity "to raise a right to relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster, and a complaint cannot survive by merely "tender[ing] naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662,

Case No. 2:14-cv-01805-DJH

678 (2009) (internal quotations and citations omitted). In short, a Plaintiff cannot come "armed with nothing more than conclusions" and "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678-79.

IV.   ARGUMENT

RCS is trying to drag the banks into its own breach of contract dispute with DCR. RCS, however, has come armed with nothing more than speculation and baseless conclusions. Each of its seven causes of action is fatally deficient.

A.   RCS' Civil Conspiracy Claim in Count One Fails as a Matter of Law.

RCS' civil conspiracy claim is defective for a number of reasons.

First, civil conspiracy is not independently actionable in Arizona. *See Barba v. Seung Heun Lee*, CV 09-1115-PHX-SRB, 2009 WL 8747368 at *8 (D. Ariz. Nov. 4, 2009) ("Under Arizona law, 'there is no such thing as a civil action for conspiracy'") (quoting *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47, 63 (Ariz.1966)). Instead, it is a derivative tort which is dependent upon an underlying tort. RCS has failed to establish with specificity an underlying tort.

Second, a civil conspiracy claim requires *an agreement* between two or more individuals to accomplish an underlying tort. RCS has failed to allege such an agreement, let alone facts to establish that an agreement was reached regarding a tort. RCS only alleges that Pacific Western and DCR entered into a contract for the sale of cards. Complaint, ¶ 11.

1.   RCS' Civil Conspiracy Claim Fails to Allege an Underlying Tort.

In Arizona, civil conspiracy is a derivative tort "for which a plaintiff may recover only if it has adequately pled an independent primary tort." *Diaz v. Arizona*, CV 11-02337-PHX-FJM, 2012 WL 1203692 at *5 (D. Ariz. Apr. 11, 2012) *aff'd*, 555 F. App'x 698 (9th Cir. 2014) (internal quotations and citations omitted). RCS' civil conspiracy claim in Count One fails to identify an underlying tort in which its conspiracy claim can be based. The Complaint makes conclusory allegations that Pacific Western "agreed with DCR to fraudulently debit the Cards" and that Pacific Western "acted in concert [with DCR] to prevent Plaintiff to obtain the benefit of the Cards, and to expose plaintiff to liability to

Cardholders." Complaint, ¶¶ 37-38. RCS, however, fails to allege how debiting the cards was fraudulent, or any of the specific factual allegations necessary to sustain a claim for fraud. Conclusions that debiting the cards was "fraudulent" are not enough. As noted by the court in *Twombly*, a complaint "must contain sufficient factual matter . . . to *state a claim* for relief that is plausible on its face." *Twombly*, 550 U.S. at 569 (2007) (emphasis added).

Courts in the Ninth Circuit have routinely dismissed such claims for failing to properly identify an underlying tort. *See, e.g., Diaz v. Arizona*, CV 11-02337-PHX-FJM, 2012 WL 1203692 at *5 (D. Ariz. 2012) *aff'd*, 555 F. App'x 698 (9th Cir. 2014) (the court dismissed the claim for civil conspiracy because Plaintiffs had "not adequately pled an independent primary tort"); *Sanchez v. United Parcel Serv. Inc.*, CV10-1586 PHX DGC, 2011 WL 3510908 at *6 (D. Ariz. 2011) ("Because the complaint fails to provide fair notice regarding the underlying tort UPS allegedly conspired to commit, the conspiracy claim will be dismissed."). In *Vicente v. City of Prescott, Arizona*, the U.S. District Court for the District of Arizona held:

> Plaintiff's complaint appears to plead aiding and abetting and conspiracy as standalone claims (Doc. 1 at 17–18), which they clearly are not under Arizona law. *Id*. In response to the motion, Plaintiff asserts that these counts, by incorporating all that goes before them in the complaint, actually allege aiding and abetting and conspiracy with respect to all other claims in the case. Such an imprecise allegation, however, does not provide notice of, or set forth a plausible basis for, aiding and abetting or co-conspirator liability against any Defendant. Plaintiff has not alleged which Defendants abetted which wrongs or how the aiding and abetting occurred, nor has he alleged which Defendants conspired with other Defendants to commit the wrongs. The reader is left to guess, something not permitted by Rule 8 or the pleading requirements of *Twombly* and *Iqbal*. Defendant's motion to dismiss Counts V and VI will therefore be granted.

*Vicente v. City of Prescott, Ariz.*, CV11-8204-PCT-DGC, 2012 WL 1438695 at *6 (D. Ariz. 2012). Similarly, Plaintiff in this dispute has not specified which claims the civil conspiracy charge applies to or any facts supporting the alleged underlying tort.

      a.    <u>Fraud.</u>

Assuming, *arguendo*, that RCS intended to allege a conspiracy to commit fraud, it would be subject to a heightened pleading standard under Federal Rule of Civil Procedure

1  9(b) ("Rule 9(b)"). Rule 9(b) states, in relevant part, that, "[I]n alleging fraud or mistake, a
2  party must state with particularity the circumstances constituting fraud or mistake." Further,
3  "[w]here a plaintiff alleges a conspiracy to commit fraud, Rule 9(b) requires more than
4  conclusory allegations of the conspiracy. . . . Rather, the conspiracy must also be pled with
5  the particularity required by Rule 9(b)." *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d
6  1010, 1020 (D. Ariz. 2001). Allegations of fraud must be pled with enough specificity to
7  "give defendants notice of the particular misconduct which is alleged to constitute the fraud
8  charged so that they can defend against the charge and not just deny that they have done
9  anything wrong. . . . ***Averments of fraud must be accompanied by the who, what, when,***
10 ***where, and how of the misconduct charged***." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d
11 1097, 1106 (9th Cir.2003) (internal citations and quotations emitted) (emphasis added).
12 Further, "[t]he plaintiff must set forth what is false or misleading about a statement, and why
13 it is false." *Vess*, 317 F.3d. at 1106 (internal quotations and citations omitted). Under
14 Arizona law, a plaintiff alleging fraud must identify: "(1) a representation; (2) its falsity; (3)
15 its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the
16 speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated;
17 (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to
18 rely on it; and (9) his consequent and proximate injury." *Cervantes v. Countrywide Home*
19 *Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (internal quotations and citations omitted).
20      RCS has failed to meet the heightened pleading requirements imposed by Rule 9(b)
21 and under Arizona law. RCS has not identified "the who, what, when, where, and how" as
22 required under Rule 9(b). Indeed, RCS has not even alleged a false representation, let alone
23 the rest of the nine elements required under Arizona law. RCS merely alleges – without
24 factual basis or support – that the cards were debited and that Pacific Western and DCR
25 allegedly agreed to do so. RCS has not identified any details of this supposed agreement, nor
26 has it given details of how Pacific Western was involved in the alleged debiting of cards.
27 RCS' civil conspiracy allegations based on fraud fall short and should be dismissed.
28

b.  Conversion.

Assuming instead, *arguendo*, that RCS intended to allege a civil conspiracy between Pacific Western and DCR to commit conversion, it has yet again failed to sufficiently plead such a cause of action. Arizona law defines conversion as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Fannie Mae v. LaRuffa*, CV-12-0301-TUC-RCC, 2013 WL 979418 at *6 (D. Ariz. 2013) *report and recommendation adopted*, CV 12-301-TUC-RCC, 2013 WL 951329 (D. Ariz. 2013) (internal quotations and citations omitted). To bring a claim for conversion under Arizona law, plaintiffs must provide factual allegations regarding "the personal property that was taken, when it was taken, by whom it was taken, how [defendant] allegedly gained improper access to the Property, or why Plaintiff believe [sic] they had the right to possession of the personal property at the time of conversion." *Howard v. JPMorgan Chase Bank, N.A.*, CV12-0952-PHX DGC, 2012 WL 6589330 at *4 (D. Ariz. 2012). "Absent such facts, Plaintiffs have not stated a plausible claim for conversion." *Id.* Put another way, a plaintiff must put forth some evidence that the defendant "intentionally exercised dominion or control over" the plaintiff's chattel. *Cheval Farms, LLC v. Chalon*, 11-43-TUC-JGZ, 2012 WL 3655339 at *4 (D. Ariz. 2012). In short, a plaintiff must establish *control* before it can allege conversion.

Count Five (conversion) makes the conclusory allegation that Pacific Western "converted the illegal debits and the Pre-Funding Trust Deposits from Plaintiff." Complaint, ¶ 48. The Pre-Funding Trust Deposits are separately defined as funds that RCS deposited into a prefunding trust account for DCR. *See* Complaint, ¶¶ 20-24. Nowhere in the Complaint is it alleged that Pacific Western ever had control over the $3.1 million allegedly debited from the cards, nor the Pre-Funding Trust Deposits. Plaintiff's sole allegation regarding the $3.1 million is that DCR allegedly debited this amount. Complaint, ¶ 30. Plaintiff's sole allegation regarding the Pre-Funding Trust Deposits is that RCS made such deposits pursuant to a demand by DCR. Complaint, ¶¶ 20-24.

Further, RCS' claim for civil conspiracy in Count One is rife with allegations of

"fraudulent conduct." *See* Complaint, ¶¶ 35-37 (all alleging fraudulent conduct). "When an . . . entire claim within a complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). RCS' civil conspiracy claim alleges numerous instances of fraudulent conduct. As such, it is held to the heightened pleading standard under Rule 9(b).

Because the funds alleged to have been converted were never in Pacific Western's custody, RCS' claim for conversion (in Count Five) should be dismissed. Accordingly, because RCS has not alleged a claim of conversion against any other defendants in this matter, and because RCS has failed to plead with particularity its allegations of fraudulent conduct included as part of its civil conspiracy claim, RCS' civil conspiracy claim fails.

  2.  <u>RCS' Civil Conspiracy Claim Fails to Allege an Agreement Between the Alleged Co-Conspirators.</u>

RCS' allegation regarding a supposed agreement between Pacific Western and DCR is threadbare and conclusory. RCS' sole allegation regarding an alleged agreement as part of its civil conspiracy claim is that Pacific Western "agreed with DCR to fraudulently debit the Cards . . . ." Complaint, ¶ 37. RCS does not describe what that agreement specifically entailed, what the parties agreed to do, how Pacific Western and DCR would each be involved in the agreement, etc. RCS' allegations come in the form of a conclusory allegations without any factual support, and "[m]ere conclusory statements in a complaint and 'formulaic recitations of the elements of a cause of action' are not sufficient." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). Such allegations do not suffice, and therefore, RCS' conspiracy claim should be dismissed.

  B.  <u>Plaintiff's Civil Aiding and Abetting Claim in Count Two Fails as a Matter of Law and Should be Dismissed in its Entirety.</u>

Like civil conspiracy, civil aiding and abetting is a derivative tort, liability for which is based in an underlying tort. *In re Mortgage Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) ("Aiding-and-abetting liability depends on the existence of an underlying

-9-

602354355v2

DEF 1ST CA BANK'S MOTION TO DISMISS
Case No. 2:14-cv-01805-DJH

tort."). For a plaintiff to properly plead aiding and abetting, it must allege that (1) the primary tortfeasor committed a tort that causes injury to the plaintiff; (2) the defendant must have known that the primary tortfeasor's conduct constituted a breach of duty; and (3) the defendant must have substantially assisted or encouraged the primary tortfeasor in the achievement of the breach. *Fromkin v. Indymac Bank FSB*, 10-CV-8014-PCT-PGR, 2010 WL 2541167 at *5 (D. Ariz. 2010). Absent establishing all three factors, a claim for civil aiding and abetting cannot survive dismissal. RCS has alleged that DCR was aided and abetted by Pacific Western in accomplishing the "illegal debiting of Cards." Complaint, ¶ 43. Again, there are numerous problems with RCS' claim.

First, as with its conspiracy claim, RCS has again failed to define the tort underlying its claim of aiding and abetting. Plaintiff merely states that Pacific Western "aided and abetted DCR in accomplishing the illegal debiting of the Cards" and that Pacific Western "and DCR acted in concert to prevent Plaintiff to obtain the benefits of the Cards, and to expose plaintiff to liability to Cardholders." Complaint, ¶¶ 43-44. Once again, Pacific Western is left to speculate as to the underlying tort. Assuming, as it previously had to, that RCS intended to allege either (1) the aiding and abetting of fraud; or (2) the aiding and abetting of conversion, RCS' complaint is lacking regarding either potential underlying tort for the same reasons outlined in Sections IV(A)(1)(a) and (b), *supra*.

Second, RCS has failed to allege that Pacific Western "knew that the [alleged] primary tortfeasor's conduct constituted a breach of duty." RCS has failed to allege (let alone attach) the contracts underlying its relationship with DCR, and has failed to provide sufficient detail regarding RCS's involvement with DCR. RCS only states that it "participated in DCR's Program," and RCS has otherwise stated that it is unable to allege or deny the existence of an agreement with DCR. Complaint, ¶¶ 16-18. RCS provides no facts regarding the nature of its agreement(s) with DCR, and does not allege that Pacific Western knew that DCR's alleged conduct constituted a breach of duty.

Third, Plaintiff has failed to allege that Pacific Western "substantially assisted or encouraged the primary tortfeasor in the achievement of the breach." RCS merely alleges

that Pacific Western gave consent to DCR by processing DCR's debits to the cards. Complaint, ¶¶ 29-30. RCS has not alleged any facts showing that such "consent" was substantial or that Pacific Western "encouraged" any breach of duty, and instead merely recites the elements related to the cause of action. As previously discussed, "[m]ere conclusory statements in a complaint and 'formulaic recitations of the elements of a cause of action' are not sufficient." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

As such, RCS' civil aiding and abetting claim should be dismissed.

### C. RCS' Unjust Enrichment Claim in Count Three Fails as a Matter of Law and Should be Dismissed in its Entirety.

To establish a claim for unjust enrichment under Arizona law, a plaintiff must show "(1) an enrichment, (2) an impoverishment, (3) a link between the enrichment and the impoverishment, (4) an absence of justification for the enrichment and the impoverishment, and (5) an absence of a remedy provided by law." *Grecian v. Nationstar Mortgage, LLC*, CV13-08089-PCT-DGC, 2013 WL 4478947 at *4 (D. Ariz. 2013). As part of this, a plaintiff must allege "how Defendant was enriched or the amount of the enrichment, how Plaintiff was impoverished or the amount, or why the action was not justified." *Id.* RCS has failed to allege the elements necessary under an unjust enrichment claim. Specifically, there are no allegations that Western Pacific was *enriched* in any way by the alleged debiting of the cards. The Complaint merely states the conclusion that Pacific Western "received a benefit from the improper and illegal debiting of credit cards by DCR through the debits imposed against the Cards." Complaint, ¶ 48. Plaintiff does not allege how Pacific Western was enriched, by how much, how Plaintiff was impoverished or by how much, or why Pacific Western's alleged actions were not justified. *See Grecian v. Nationstar Mortgage, LLC*, CV13-08089-PCT-DGC, 2013 WL 4478947 at *4 (D. Ariz. 2013) ("Plaintiff does not allege how Defendant was enriched or the amount of the enrichment, how Plaintiff was impoverished or the amount, or why the action was not justified. . . . The claim will be dismissed."). Absent some factual details, RCS propounds merely a "formulaic recitation of

a cause of action's elements . . . [which does not] raise the claim from possible to plausible," such that it suffices for purposes of *Twombly* and *Iqbal*. *Id.* (internal quotations and citations omitted). As such, RCS' unjust enrichment claim should be dismissed.

D.   Plaintiff's Accounting Claim in Count Four Fails as a Matter of Law and Should be Dismissed in its Entirety.

In its fourth count, Plaintiff seeks to assert a claim for an accounting.

As an initial matter, an "accounting" is a remedy for a wrong, rather than a legal theory under which a party is entitled to the remedy of accounting. *See Cmty. Dental Servs. of Arizona, LLC v. Am. Dental Indus., Inc.*, CV 12-01039-PHX-JAT, 2012 WL 4856710 n. 6 (D. Ariz. 2012) ("Plaintiff seeks accounting as a remedy for some wrong performed by Defendants, but has failed to state a legal theory under which it is entitled to such a remedy."); *Herold v. U.S. Bank, N.A.*, CV 11-08108-PCT-FJM, 2011 WL 4072029 at *3 (D. Ariz. 2011) ("Plaintiff seeks an accounting of amounts due under the loan but does not cite a single law underlying this right. As a result, he has not pled a plausible claim for relief."). Here, RCS has entirely failed to present any theory under which it should be granted an accounting. "The burden of showing that an accounting is necessary is on the party requesting the accounting." *Phillips v. Mortgage Elec. Registration Sys., Inc.*, CV10-2459-PHX-DGC, 2011 WL 587097 (D. Ariz. 2011) (internal quotations and citations omitted). Plaintiff has not met this burden.

Additionally, RCS does not allege the existence of any fiduciary relationship between itself and Pacific Western; indeed, it cannot do so – the parties do not have a contractual relationship, much less a fiduciary relationship. Yet such a fiduciary relationship is typically necessary to justify an accounting. "Under Arizona law, a claim for an accounting requires Plaintiffs to allege an agency or trust relationship with respect to the party of which the request for accounting is made." *Campbell v. California Reconveyance Co.*, CV 11-0180-PHX-DGC, 2011 WL 1740183 at *5 (D. Ariz. 2011). "In Arizona, actions for an accounting are usually reserved to parties in a fiduciary relationship." *Herold v. U.S. Bank, N.A.*, CV 11-08108-PCT-FJM, 2011 WL 4072029 at *3 (D. Ariz. 2011) (internal quotations and

citations omitted). Because RCS has failed to state a legal theory or fiduciary relationship supporting an accounting, its accounting claim should be dismissed.

### E. RCS' Conversion Claim in Count Five Fails as a Matter of Law and Should be Dismissed in its Entirety.

As is discussed in Section IV(A)(1)(b), *supra*, Plaintiff has failed to properly plead a claim for conversion.[2]  Because RCS has not alleged that Pacific Western was ever in possession of any of the monies at issue in this matter, and for the additional reasons discussed *supra*, RCS' claim for conversion should be dismissed.

### F. RCS' Pattern of Unlawful Activity Claim in Count Six Fails as a Matter of Law and Should be Dismissed in its Entirety.

RCS alleges that Pacific Western has committed both theft and a scheme or artifice to defraud, as defined in A.R.S. § 13-2301(D)(4)(b), in violation of A.R.S. § 13-2314.04 ("Arizona RICO").  Arizona RICO states, in pertinent part, that "[a] person who sustains reasonably foreseeable injury to his person, business or property by a pattern of racketeering activity . . . may file an action in superior court . . . ." A.R.S. § 13-2314.04(A).  "To survive a motion to dismiss, a plaintiff asserting a racketeering claim in Arizona must allege facts showing: (1) two or more predicate acts that constitute 'racketeering' as defined by A.R. S. § 13–2301(D)(4); (2) that the predicate racketeering acts constitute a 'pattern of racketeering activity' as defined by § 13–2314.04(T)(3)10; and (3) the racketeering activity caused the plaintiff's injury. A.R.S. § 13–2314.04." *Fromkin v. Indymac Bank FSB*, 10-CV-8014-PCT-PGR, 2010 WL 2541167 at *4 (D. Ariz. 2010).

"A 'pattern of racketeering activity' means that there must be at least two related and continuous acts of racketeering." *Hannosh v. Segal*, 235 Ariz. 108, 328 P.3d 1049, 1052 (Ct. App. 2014).  The "pattern of racketeering activity" requirements are identical under Arizona RICO and its federal equivalent, the Racketeer Influenced and Corrupt Organizations Act, 18

---

[2] The substance of Pacific Western's argument regarding Plaintiff's conversion claim is located in Section IV(A)(1)(b).

U.S.C. § 1961 *et seq.* ("Federal RICO"). *See R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, CV 12-8261-PCT-JAT, 2013 WL 2217831 at *18 (D. Ariz. 2013) ("The Court has previously compared the 'pattern of racketeering activity' requirements under [Federal RICO] and [Arizona RICO] and found that, insofar as is relevant here, the statutes operate identically.") (citing *Aviva USA Corp. v. Vazirani*, 902 F.Supp.2d. 1246 (D. Ariz. 2012)). As determined by the U.S. Supreme Court, the Federal RICO statute mandates *at least two* predicates to establish a pattern of racketeering, but two "may not be sufficient," and the statute "assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 230-238 (1989) (emphasis in original). Although RCS' threadbare claim states that the alleged acts were "a series of related predicate acts," (Complaint, ¶ 68) no factual details are given regarding those alleged predicate acts. RCS cannot survive a motion to dismiss by masquerading the elements of a racketeering claim as though they were facts. RCS gives no support to its conclusions.

Like the definition of a "pattern of racketeering activity," Arizona has adopted the U.S. Supreme Court's definition of "continuous" to mean "that the related predicate acts extend 'over a substantial period of time,' i.e., over more than 'a few weeks or months.'" *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149, 153, 7 P.3d 158, 162 (Ct. App. 2000) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)); *see also R. Prasad Indus.*, 2013 WL 2217831 at *16 ("[B]ecause 'Congress was concerned in RICO with long-term criminal conduct,' '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.'") (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). "[T]he Ninth Circuit has previously noted an absence of cases finding continuity where all of the alleged predicate acts occurred within a year." *R. Prasad Indus.*, 2013 WL 2217831 at *17 (citing *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir.1992)); *see also Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) ("Activity that lasts only a few months is not sufficiently continuous."). Once again, even though RCS claims that the alleged acts "extend[ed] over a substantial period of time that by their very nature project into the future

with a threat of repetition," (Complaint, ¶ 68) RCS is merely reciting an element of a racketeering claim as though it was a fact. RCS gives no indication as to the time – what year (or years) these alleged acts occurred, how often they occurred, whether they have been ongoing or have ceased, or how they have a "threat of repetition." Once again, RCS' bald assertions do not suffice for purposes of surviving dismissal.

Plaintiff must also specifically identify the alleged "enterprise" to state a claim under A.R.S. § 13-2314.04. *See Fromkin v. Indymac Bank FSB*, 10-CV-8014-PCT-PGR, 2010 WL 2541167 at *3 (D. Ariz. 2010). "An 'enterprise' is: (I) a group of persons associated together for a common purpose; (ii) that is an *ongoing organization*, whether formal or informal; and (iii) wherein the various associates function as *a common unit*." *Id.* (emphasis in original). Moreover, because RCS alleges a scheme to defraud, its claim "must be pled with particularity." *Id.*; *see also* A.R.S. § 13-2314.04(R) ("If any pleading, motion or other paper includes an averment of fraud or coercion, it shall state these circumstances with particularity with respect to each defendant."). As it has done previously, Plaintiff refers to an "enterprise" in its Complaint (Complaint, ¶ 65) but does not allege any facts to suggest the nature of the enterprise, nor how it was run, nor the specific details of its formation or existence. Such an allegation is not sufficient to survive dismissal.

Finally, RCS has failed to plead its allegations of fraud with particularity. Beyond a threadbare recitation of the elements of a racketeering claim, RCS has not alleged any facts sufficient to survive a motion to dismiss. This does not suffice for purposes of *Twombly* and *Iqbal*, and falls even further short of the particularity requirements under Rule 9(b). *See, e.g.*, *Castro v. Executive Tr. Servs., LLC*, CV-08-2156-PHX-LOA, 2009 WL 438683 at *9 (D. Ariz. 2009) ("Aside from the conclusory allegations that Defendants 'participat[ed] in a scheme of racketeering' and engaged in a 'pattern of racketeering,' Plaintiffs fail to allege with any specificity the existence of a RICO enterprise, or the conduct of a pattern of racketeering."). Similarly to the facts in *Castro*, Plaintiff has not pled the details of the alleged enterprise, the alleged pattern, the alleged continuing acts, etc. RCS' recital of the elements of a cause of action – dressed up like facts – does not meet these standards.

1  Accordingly, Plaintiff's Pattern of Unlawful Activity claim should be dismissed.

2     G. <u>Plaintiff's Federal Racketeering Claim in Count Seven Fails as a Matter of
3       Law and Should be Dismissed in its Entirety.</u>

4    Plaintiff's federal racketeering claim under 18 U.S.C. § 1964 alleges that Pacific
5  Western and DCR committed wire fraud. Complaint, ¶¶ 74-77. This claim falls short for
6  many of the same reasons as its previous claim under Arizona RICO. Section IV(G), *supra*.
7  "The elements of a federal civil RICO claim are (1) conduct (2) of an enterprise (3) through
8  a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the
9  plaintiff's business or property." *Castro v. Executive Tr. Servs., LLC*, CV-08-2156-PHX-
10 LOA, 2009 WL 438683 at *8 (D. Ariz. 2009) (internal quotations and citations omitted).

11   "To show the existence of an enterprise under the second element, plaintiffs must
12 plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C)
13 longevity necessary to accomplish the purpose." *Eclectic Properties E., LLC v. Marcus &
14 Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "Moreover, the organization must have an
15 'existence beyond that which is merely necessary to commit the predicate acts of
16 racketeering.' *Id*. The enterprise must be an entity other than the conspiracy." *Baker ex rel.
17 Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 543, 5 P.3d
18 249, 257 (Ct. App. 2000) *disapproved of by In re Parmalat Sec. Litig.*, 06 CIV., 2991
19 (LAK), 2007 WL 5008628 (S.D.N.Y. Feb. 2007) (citing *Chang v. Chen*, 80 F.3d 1293, 1299
20 (9th Cir.1996)). As discussed previously in Section IV(G), *supra*, Plaintiff has not alleged
21 details of an enterprise (beyond using the word "enterprise") whatsoever.

22   As in Arizona, "[a] pattern of racketeering requires at least two acts of racketeering
23 activity." *Id*. As discussed in Section IV(G), *supra*, RCS has failed to demonstrate such a
24 pattern. By way of example, in *U.S. Concord, Inc.*, the court noted that the plaintiff's wire
25 fraud allegations did not include "one specific wire communication" in the complaint and,
26 accordingly, dismissed the claim. *U.S. Concord, Inc. v. Harris Corp.*, 757 F. Supp. 1053,
27 1061 (N.D. Cal. 1991). Identically, RCS' Complaint does not cite to a *single* specific alleged
28 wire fraud communication, much less a "pattern" of wire fraud.

"'The Ninth Circuit has held that allegations of predicate acts under RICO must comply with Rule 9(b)'s specificity requirements.'" *Castro v. Executive Tr. Servs., LLC*, CV-08-2156-PHX-LOA, 2009 WL 438683 at *9 (D. Ariz. 2009) (quoting *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1061 (N.D.Cal.1991)); *see also Skinner v. Deutsche Bank Nat. Trust Co.*, 11-CV-710-PHX-GMS, 2011 WL 6153631 at *2 (D. Ariz. 2011) *aff'd*, 12-15301, 2014 WL 2980242 (9th Cir. 2014) ("Rule 9(b), however, applies to all causes of action in which fraud is an element, including civil RICO claims."). "A RICO plaintiff must allege the time, place and manner of each act of fraud, and the role of each defendant in the fraud or other criminal acts identified in § 1961(1)." *Castro*, 2009 WL 438683 at *9 (citing *Lancaster Community Hospital v. Antelope Valley Hospital Dist.*, 940 F.2d 397, 405 (9th Cir.1991). "To avoid dismissal for inadequacy under Rule 9(b), Plaintiff's complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Skinner*, 2011 WL 6153631 at *2 (internal quotations and citations omitted). As discussed in Section IV(G), *supra*, Plaintiff has not pled the details required under Rule 9(b), including the who, what, when, where, and how, of the alleged fraudulent acts.

Accordingly, Plaintiff's federal racketeering claim should be dismissed.

V.   CONCLUSION

For the foregoing reasons, Pacific Western respectfully requests that this Court grant its Motion to Dismiss.

Dated: September 11, 2014.

PILLSBURY WINTHROP SHAW PITTMAN LLP
MICHAEL J. FINNEGAN


By: */s/ Michael J. Finnegan*
Michael J. Finnegan
Attorneys for Defendant
1st CALIFORNIA BANK aka PACIFIC WESTERN BANK aka PAC WEST BANCORP

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys registered to receive NEF's in this case.

/s/ Michael J. Finnegan